(68 South. 220)

No. 21154.

THOMPSON v. MILLER et al.

(April 12, 1915.)

*(Syllabus by the Court.)*

1. DESCENT AND DISTRIBUTION ☞71—SUC-
CESSION—DETERMINATION OF HEIRSHIP—EF-
FECT OF JUDGMENT—LIABILITY FOR COMMU-
NITY DEBTS.

A decree, recognizing certain persons as
heirs of the deceased wife and ordering them to
be put in possession of their undivided half in-
terest in the community property conjointly with
the surviving husband, is absolutely null as to
heirs who never authorized any such proceeding,
but binds the heir participating therein, and
makes him liable for his virile share of one-
half of the community debts.

[Ed. Note.—For other cases, see Descent and
Distribution, Cent. Dig. §§ 229–236; Dec. Dig.
☞71.]

2. DESCENT AND DISTRIBUTION ☞72—SUC-
CESSION—INTEREST IN COMMUNITY PROPERTY
—SHAM SALE—RENUNCIATION.

A sham sale by all the heirs of the wife to
their father of their half interest in the com-
munity property *held*, under the facts and cir-
cumstances of the case, to have constituted a
renunciation as to the heirs who had not previ-
ously accepted the succession of their mother.

[Ed. Note.—For other cases, see Descent and
Distribution, Cent. Dig. §§ 221, 222; Dec. Dig.
☞72.]

Appeal from Eighteenth Judicial District
Court, Parish of Acadia; William Campbell,
Judge.

Action by John F. B. Thompson against
Dennis Miller and others. Judgment for
plaintiff against the defendant named, and
against plaintiff as to other defendants, and
plaintiff appeals. Judgment reversed so far
as against plaintiff, and rendered.

Modisette & Adams, of Jennings, for ap-
pellant. Smith & Carmouche, of Crowley,
for appellees.

LAND, J. In 1907 plaintiff sold to Dennis
Miller, a married man, 320 acres of land for
$9,600, of which $1,600 was paid in cash, and
the remainder was represented by five notes,
each for $1,600. Mrs. Celeste Miller, the wife,
died in February, 1911, leaving nine children

of the marriage. On May 28, 1913, the suc-
cession of Mrs. Celeste Miller was opened
and closed by proceedings as follows:

Petition of Dennis Miller and of the heirs
of his wife to have the community property
decreed exempt from inheritance taxation,
and to have the plaintiffs recognized as joint
owners of the same in the proportion of one
half to Dennis Miller and the other half to
the heirs of his deceased wife. The tax col-
lector made no opposition, and judgment was
rendered as prayed for by the petitioners.
The petition was signed by Heinen & Modi-
sette, attorneys, and was verified by the affi-
davit of Philip Miller, one of the heirs of
Mrs. Celeste Miller.

On July 10, 1913, the heirs of the wife sign-
ed an instrument, purporting to be a cash
sale, for $18,812.50, conveying their undivid-
ed half interest in all the community proper-
ty, real and personal, to their father, Dennis
Miller.

On April 15, 1914, Dennis Miller mortgaged
unto the Calcasieu Trust & Savings Bank
most all of the said real property to secure
a loan of $6,328.68, represented by his note.

On August 14, 1914, plaintiff sued out ex-
ecutory process on the notes and mortgage of
date June 14, 1907, under which the lands
sold to Dennis Miller on said date were seiz-
ed, sold, and adjudicated to said plaintiff,
the vendor, for the price of $8,300, leaving
an unsatisfied balance of $3,673.66.

On November 2, 1914, the present suit was
instituted to recover said balance of the
defendants, Dennis Miller and the heirs of
his wife. The petition alleged that said heirs
had accepted the succession of their mother
"purely, simply, and unconditionally."

Dennis Miller made no defense. The heirs
denied that they had accepted the succession
of their mother as alleged, and averred that
the petition in their names for recognition of
heirship, etc., was filed in said succession
without authorization on the part of the re-

spondents, or any of them, and without their permission, knowledge, or consent. Respondents further averred that they have always renounced, and intended to renounce, said succession, have never intermeddled in its affairs or management, and have never received anything of value therefrom, but have left the entire management of the succession to their father.

As to the deed from them to their father, referred to supra, the respondents averred that the same was absolutely without consideration, and was signed by them through error and misrepresentation, believing that it was a renunciation of their rights in said succession in favor of their father, Dennis Miller.

The case was tried, and there was judgment in favor of the plaintiff against Dennis Miller, but plaintiff's demands against the other defendants were rejected. Plaintiff has appealed.

[1, 2] All the heirs of Mrs. Celeste Miller, except Philip Miller, testified that they never employed, or authorized the employment of, Mr. Heinen as attorney for their mother's succession. Mr. Heinen was consulted by Dennis Miller and his son, Philip, and understood that the latter represented the other heirs. The petition for recognition of heirship, etc., was signed by Mr. Heinen in his firm's name, and was verified by the affidavit of Philip Miller, who is certainly estopped by his oath to deny the authority of Mr. Heinen to file the petition and conduct the proceedings to final judgment. The other heirs had nothing to do with the employment of counsel. Most of them lived in another parish, and all were induced by the representations of Philip Miller to believe that the deed to their father was a mere giving up or renunciation of their rights in the succession of their mother. The deed itself was without consideration, and as a conveyance of property was a mere sham. Plaintiffs' rights had already accrued, and were secured by vendor's privilege and special mortgage.

It appears from the evidence that Mr. Heinen was also attorney for the plaintiff, and in opening and closing the succession of Mrs. Celeste Miller acted in the interest of Dennis Miller and the creditors of the community. The rights of the plaintiff were in no wise affected or prejudiced by the execution of the sham deed in question.

Plaintiffs' contention that defendants cannot collaterally attack the judgment recognizing them as heirs of their mother is without merit, since all of them, except Philip, were strangers to the proceedings and decree.

In the recent case of State ex rel. Futch v. Rockett & Futch, 68 South. 189 [1] (No. 20,983), this court held that a judgment rendered on a waiver of citation by an unauthorized attorney was an absolute nullity and could be assailed collaterally. The same principle applies to a decree rendered on a petition signed by an unauthorized attorney.

Plaintiff contends that, the other heirs having renounced, Philip Miller, as sole heir of his mother, is bound for one-half of the debt sued for, with costs. Philip was recognized as heir for one-eighteenth of the community property, and thereby became liable for the same proportion of the community debts. Philip's coheirs did not renounce in his favor, but all the heirs renounced in favor of their father. Philip's liability as heir was not increased by the transaction.

It is therefore ordered that the judgment appealed from be reversed, in so far as it rejects the demands of the plaintiff against Philip Miller, and it is now ordered that the plaintiff do have and recover of the said Phillip Miller the sum of $204.69, with 8 per cent. per annum interest thereon from October 24, 1914, until paid, with costs, and that as thus reversed and in part amended,

---

[1] 136 La. 1091.

said judgment be and is affirmed; costs of appeal to be paid by the said Philip Miller.

O'NIELL, J., concurs in the decree only.